**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GERALD BURTON, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * Civil Action No.: 10-1750 (RMU) |
| | * |
| DISTRICT OF COLUMBIA, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, OR ALTERNATIVELY, EXTENSION OF THE DEADLINE TO ENGAGE IN PRE-CERTIFICATION DISCOVERY

**COMES NOW** Plaintiffs, by and through their undersigned counsel, hereby submit their Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, or Alternatively, Extension of the Deadline to Engage in Pre-Certification Discovery and hereby move this Honorable Court to certify the plaintiff class pursuant to Rule 23 of the Federal Rules of Civil Procedure and Local Civil Rule 23.1.

## I.    INTRODUCTION

This is a putative class action to challenge Defendants' policy, pattern and practice of discriminating against Plaintiffs on the basis of their race in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Specifically, Defendants meted out more severe punishments to Plaintiffs than non-African American firefighters, unfairly treated Plaintiffs, denied promotions from October 15, 2007 to the present, for which they were qualified and eligible, in order to promote non-African American firefighters, and subjected Plaintiffs to a race-based hostile work environment.

Named Plaintiffs are African American firefighters who are currently or formerly employed by the District of Columbia Fire and Emergency Medical Services

("DCFEMS") and who have been denied equal and fair treatment in the workplace because of Defendants' pattern and practice of discrimination and disparate treatment in the workplace.

42 U.S.C. § 1981, which is more commonly referred to as Section 1981, was originally enacted as the first section of the Civil Rights Act of 1866. Its purpose then and its purpose today is the same: to give persons the right to make and enforce employment contracts free of race discrimination. Furthermore, 42 U.S.C. § 1983, also known as Section 1983, was enacted five years after Section 1981 as part of the Civil Rights Act of 1871 (or the "Ku Klux Klan Act"). Although its primary purpose was to provide a legal remedy against abuses being committed in southern states, its purpose has been expanded to allow liability to attach to a governmental official for violations of one's constitutional rights. *Monroe v. Pape*, 365 U.S. 167 (1961).

Defendants failure to abide by 42 U.S.C. § 1981 and 42 U.S.C. § 1983 have caused Plaintiffs to lose a substantial amount of income and benefits, in some cases their employment, pain and suffering, humiliation and embarrassment, denied the same liberty and property rights as non-African American firefighters, and denied them ability to enjoy all benefits and privileges of employment, with some injuries being permanent in nature.

## II.   ARGUMENT

### A.   The Proposed Class and Class Representatives Satisfy the Requirements of Rule 23.

Rule 23 of the Federal Rules of Civil Procedure, which governs class certification, permits certification only if:

> (1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parities are typical of the claims or defenses of the class, and (4)

3

the representative parties will fairly and adequately represent the interests of the class.

Federal Rule of Civil Procedure 23(a).  In addition, the party seeking certification must demonstrate that one of the relevant provisions of Rule 23(b), *infra*, have been satisfied.

Further, Plaintiffs bear the burden of establishing that there is a "reasonable basis for crediting [their] assertion[s]" as to each Rule 23 requirement. *Wagner v. Taylor*, 836 F.2d 578, 587 n.57 (D.C. Cir. 1987); *see also McCarthy v. Kleindienst*, 741 F.2d 1406, 1414, n.9 (D.C. Cir. 1984).  However, inquiry is limited to whether the requirements of Rule 23 have been met, and not on the underlying merits of the case.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("the question [on class certification] is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 [have been] met").  Moreover, "[w]hen there is a question as to whether certification is appropriate, the Court should give the benefit of the doubt to approving the class." *In re Workers' Compensation*, 130 F.R.D. 99, 103 (D.Minn. 1990); *see also Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 1992 WL 212226, at *2 (M.D. Pa. 1992) ("if there is any doubt about certification, it should be resolved in favor of class treatment.").

Here, Plaintiffs are seeking class certification under Rule 23 and bring this action for relief on behalf of themselves and others similarly situated.  They seek to represent the following class of firefighters:

> African American firefighters at the D.C. Fire Department [DCFEMS] who experienced a hostile work environment, were subjected to discipline unequal to that of their similarly situated white colleagues, were discriminatorily denied promotions that were awarded to their white colleagues, or were otherwise subjected to discrimination within the applicable statute of limitations.

Complaint, ¶ 18.

Plaintiffs will address the class certification requirements separately and, as explained below, Plaintiffs satisfy the requirements of Rule 23. Thus, the Court should certify this case as a Rule 23 class action.

**B.    Plaintiffs Have Met the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure.**

**1.    <u>Numerosity</u>**

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable. The court examines each proposed class on its own facts and will not place a numerical floor on class size. *General Tel.Co. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). To satisfy this requirement, this Court has repeatedly held that plaintiffs "need not provide the exact number of potential class members . . . ." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003); *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D.D.C. 1988). However, other courts have observed that "numerosity is presumed at a level of 40 members." *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1993); *Bynum,* 214 F.R.D. at 32 ("[g]enerally speaking, courts have found that a proposed class consisting of at least forty members will satisfy the impracticability requirement"); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), certiorari denied, 479 U.S. 883 (1986) (explaining that "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers varying according to other factors") (internal punctuation omitted).

Although there are no hard and fast rules specifying how many class members are necessary to satisfy this "numerosity" requirement, there can be no serious question that this class will be in excess of 40. As listed in the Complaint, there are presently thirty-two (32) named Plaintiffs in this case. Further, at this juncture, it appears as though we

will seek to amend and add at least another fourteen (14) DCFEMS firefighters; thereby, bringing the total named Plaintiffs to forty-six (46). On information and belief, there are over 1,000 African American firefighters employed by DCFEMS. The fact that the exact number in the class has yet to be completely identified is irrelevant, as "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Joining over 1,000 or even the 32 (potentially 46) named Plaintiffs in individual actions in one non-representative litigation is impractical.

In addition to class size, courts may look to other factors to determine whether "joinder is impractical" and whether Rule 23(a)(1) prerequisite has been met. These factors include: "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux, supra.*

In the instant case, because many of the named Plaintiffs and class members are public servants, it would impractical for them to individually obtain legal services to vindicate their legal rights. Certification would maximize the available legal and judicial resources and would provide Plaintiffs with uniform redress of their common grievances against Defendants. Moreover, class certification is appropriate here because Plaintiffs are challenging Defendants widespread, pattern and practice of disparate treatment and discrimination and a systematic disregard of the federal and state anti-discrimination laws, namely 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *See, e.g., Upper Valley Ass'n for Handicapped Citizens v. Mills*, 168 F.R.D. 167, 169-170 (D. Vt. 1996) (concluding that "joinder was impractical" because "[p]laintiffs' complaint seeks to remedy systematic

failures to adopt and implement procedures for consideration of [IDEA] petitions . . . .");

*see also* H. Newberg & A. Conte, 1 Newberg on Class Actions (3d ed. 1992), sec. 3.07 at

p. 36 ("a special consideration applies to actions seeking declaratory and injunctive relief

against conduct that is likely to cause future injuries . . . . In these cases, persons who

might be injured in the future may be included in the class and are sometimes held to

make joinder impracticable without regard to the number of persons already injured").

The evidence alone is sufficient to establish numerosity and that the number of

potential class members far exceeds 40. Pursuit of individual actions on behalf of each of

these potential class members would be impractical. Class certification would allow

efficient use of judicial resources and uniform redress of Plaintiffs' common grievances.

Accordingly, the numerosity is satisfied in this case.

### 2.   **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the

class." It is not necessary that every issue of law or fact be the same for each class

member. *Forbush v. J.C. Penney, Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993). This Court

has maintained that variations among the legal theories underpinning claims of putative

class members does not defeat the commonality requirement so long as a single aspect or

feature of the claim is common to all proposed members. *Bynum v. District of Columbia*,

214 F.R.D. 27, 33 (D.D.C. 2003); *Pendleton v. Schlesinger*, 73 F.R.D. 506, 508 (D.D.C.

1977), *aff'd*, 628 F.2d 102 (D.C. Cir. 1980) ("In passing on commonality, it is not

appropriate to examine the likeness or relation of the several claims of all members of the

class and their representatives. The only proper inquiry is, as the language [of Rule

23(a)(2)] suggests, whether there is some aspect or feature of the claims which is

common to all."). Nor do factual variations among the claims of putative class members

7

defeat commonality, so long as "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

Here, there is far more than just a "single question of law and fact" common to all members of the class. *Duprey v. Connecticut Department of Motor Vehicles*, 191 F.R.D. 329, 334 (D. Conn. 2000) ("there need only be a single question of law and fact common to all members of the class [to satisfy the commonality requirement of law and fact common to all class members]"); *Pigford v. Glickman*, 182 F.R.D. 341 (D.D.C. 1998). Indeed, named Plaintiffs and the putative class members share numerous questions of fact and law. The key questions of fact and law in common arise from Defendants systematic failures to abide by 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Further, as a result of Defendants unlawful conduct, Plaintiffs also have common injuries, namely denying Plaintiffs the right to make and enforce contracts as is enjoyed by non-African American firefighters, have been subjected to harsher penalties and treatment than non-African American firefighters, have lost substantial amount of income and benefits, denied the enjoyment of the benefits and privileges of a discrimination-free contractual relationship, denied their constitutional rights under the Fifth Amendment, denied promotional opportunities, loss of employment, and denied the right to work in an environment free of discrimination and racial hostility.

As set forth in Plaintiffs' Complaint, particular questions of law and fact common to all class members include, but are not limited to:

1.      Whether Defendants discriminated against African American firefighters by subjecting them to a hostile work environment that was severe or

8

    pervasive and altered the conditions of their workplace based on their race. Complaint ¶ 21.

2.  Whether Defendants discriminated against African American firefighters by subjecting them to discipline that was more severe than that to which similarly situated white firefighters were given for similar offenses based on their race.  Complaint ¶ 21.

3.  Whether Defendants discriminated against African American firefighters by denying them promotions for which they were qualified in order to promote white firefighters based on their race.  Complaint ¶ 21.

To the extent that there may be factual differences between Plaintiffs, those factual differences are not likely to affect the disposition of the legal issues in this case.

  In addition, where, as here, Defendants have engaged in a pattern of unlawful conduct that is directed at class members or have adopted an unlawful policy or practice that is generally applicable to class members, precedent establishes that commonality requisite is satisfied. *Adair v. England*, 209 F.R.D. 5, 11 (D.D.C. 2002) ("the named plaintiffs and the members of the putative class share several of the same legal claims, all relating to the Navy's allegedly unconstitutional system of religious preferences"); *Bynum v. District of Columbia, supra*, 214 F.R.D. at 33 ("[i]n the present case, plaintiffs allege that defendant has systematically detained persons in their custody after their scheduled release, in violation of . . . the Constitution.  Because of the alleged course of conduct that caused injury to the plaintiffs . . ., the causation elements of their Section 1983 claims are common to all plaintiffs."); *see also* 1 Newberg on Class Actions, *supra*, sec. 3.10 at pp. 50-51 (commonality is "easily met in most cases" and is satisfied where

defendants have "engaged in some course of conduct that affects a group of persons and gives rise to a cause of action . . . .").

As in these cases, Defendants have engaged in a course of conduct, namely a policy, pattern and practice of discriminating against Plaintiffs by denying them opportunities for promotions in order to promote non-African American firefighters, subjecting them to unequal and harsher disciplinary measures for similar conduct of non-African American firefighters, and subjected them to race-based hostile work environment, that harms the entire class and gives rise to common claims under federal law. Accordingly, the commonality requirement is satisfied in this case.

### 3. Typicality

Rule 23(a)(3) requires that class representatives have claims that are typical of all class members' claims. In other words, the class representatives must have suffered a similar injury from the same impermissible practice. *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987). As with the commonality requirement, typicality is not defeated when there are "differences in the factual patterns underlying the claims or defenses of individual class members." *United States v. Trucking Employers, Inc.*, 75 F.R.D. 682, 688 (D.D.C. 1977) (citations omitted). Therefore, it is not necessary that each named Plaintiffs be subjected to all of the methods by which Defendants discriminated against them by denying them opportunities for promotions in order to promote non-African American firefighters, subjected them to unequal and harsher disciplinary measures for similar conduct of non-African American firefighters, or subjected them to race-based hostile work environment. The only requirement is that the named Plaintiffs were injured by the same systematic pattern of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 violations that

injured the other class members, and that the named Plaintiffs' injury is typical of other class members' injuries.

Here, named Plaintiffs' claims are based on the same legal theory as that of the class and as such the claims of the class representatives are typical of the claims of class members. Named Plaintiffs' injuries arise from the same course of conduct affecting the entire class, namely Defendants have denied Plaintiffs the right to make and enforce contracts as is enjoyed by non-African American firefighters, have subjected them to harsher penalties and treatment than non-African American firefighters, have made Plaintiffs lose a substantial amount of income and benefits, denied the enjoyment of the benefits and privileges of a discrimination-free contractual relationship, denied Plaintiffs their constitutional rights under the Fifth Amendment, denied them promotional opportunities, loss of employment, denied Plaintiffs the right to work in an environment free of discrimination, and otherwise violated 42 U.S.C. § 1981 and 42 U.S.C. § 1983 by discriminating against Plaintiffs by denying them opportunities for promotions in order to promote non-African American firefighters, subjecting them to unequal and harsher disciplinary measures for similar conduct of non-African American firefighters, and subjected them to race-based hostile work environment.

Furthermore, the circumstances of the named Plaintiffs are sufficiently similar to those of the class members. Approximately 20 of the current 32 named Plaintiffs have alleged that Defendants denied them promotion opportunities. Approximately 15 of the current 32 named Plaintiffs have alleged that Defendants unfairly subjected them to harsher discipline than their non-African American co-workers for similar offenses. All of the named Plaintiffs maintain that they have been subjected to a race-based hostile

work environment.   All of the personnel decisions were entirely determined and administered by the DCFEMS, either directly or through its contractors.

To the extent that there are different facts, any differences among Plaintiffs' individual facts do not undercut the typicality of their claims.  As this Court has stated in *Bynum*, "demonstrating typicality does not mean showing that there is not factual variations between the claims of the plaintiffs.  Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct." *Bynum*, 214 F.R.D. at 35; *see also In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d at 242. Moreover, each of Plaintiffs injuries were caused by Defendants' pattern and practice of systematic violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

Accordingly, the typicality requirement is satisfied in this case.

### 4.   **Adequacy**

Rule 23(a)(4) requires plaintiffs to establish that the class representatives are capable and adequately representing the interests of the class.  For one thing, the interests of named plaintiffs in the litigation must not conflict with interests of other class members.  *Wagner*, 836 F.2d at 595-96.  Class representatives also must be able "to vigorously prosecute the interests of the class through qualified counsel." *National Ass'n of Regional Medical Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976). However, it is well settled that "[t]he burden is on the defendant to demonstrate that the representation will be inadequate[,]" which it cannot.   *Sala v. National Railroad Passenger Corp.*, 120 F.R.D. 494, 498 (E.D. Pa. 1988).  "Absent any conflict between the interests of the representative and other [members of the class], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate

protection of the class may be assumed." *In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d at 243 (internal citation omitted).

Here, there are no conflicts of interest between the named Plaintiffs and the proposed class. The class representatives have no interests that are antagonistic to the class. In fact, named Plaintiffs' interests are coextensive with those of the class. Named Plaintiffs challenge the same unlawful conduct that affects the class (*i.e.*, discriminatory conduct in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983). Named Plaintiffs have also suffered the same harm as that of the class (*i.e.*, denying Plaintiffs the right to make and enforce contracts as is enjoyed by non-African American firefighters, have been subjected to harsher penalties and treatment than non-African American firefighters, have lost substantial amount of income and benefits, denied the enjoyment of the benefits and privileges of a discrimination-free contractual relationship, denied their constitutional rights under the Fifth Amendment, denied promotional opportunities, loss of employment, and denied the right to work in an environment free of discrimination), and they seek relief that will benefit all members of the class.

Moreover, counsel representing the class is, under any definition, qualified, experienced, and generally able to conduct the litigation. Plaintiffs' counsel, Donna Williams Rucker, Charles W. Day, and Joseph D. Gebhardt are qualified, experienced in litigating civil matters (namely, employment discrimination litigation), including class actions, and will vigorously prosecute this case. *See, e.g., In re Joint Eastern and Southern Dist. Asbestos Litigation*, 78 F.3d 764, 778 (2d Cir. 1996); *U.S. Trust Co. of New York v. Alpert*, 163 F.R.D. 409 (S.D.N.Y. 1995). Class counsel has already spent countless hours investigating, preparing and organizing themselves in this class action.

Mrs. Rucker graduated from Georgetown University Law Center in 1986. She is a Partner at the law firm Gebhardt & Associates, LLP. Mrs. Rucker's focus is in employment law and has been engaged in civil litigation in the federal courts throughout her 25-year legal career. She also has represented countless DCFEMS firefighters and paramedics in DCFEMS Trial Boards and subsequent appeals. Mrs. Rucker was also a Magistrate Judge in the 18th Judicial Circuit in Alexandria, Virginia. She currently represents the plaintiff class in *Blackmon-Malloy, et al. v. United States Capitol Police Board*, 01-CV-2221 (EGS).

Mr. Day graduated from George Washington University Law Center in 1997. Mr. Day is a Partner at the law firm Gebhardt & Associates, LLP. He has been engaged in civil litigation throughout his 14-year legal career, and his focus is in employment litigation. He currently represents the plaintiff class in *Blackmon-Malloy, et al. v. United States Capitol Police Board*, 01-cv-2221 (EGS), and in *Breen, et al. v. Mineta*, 05-cv-654 (RWR).

Mr. Gebhardt graduated from Harvard Law School in 1971. Mr. Gebhardt is the Managing and Founding Partner at the law firm Gebhardt & Associates, LLP. Prior to founding Gebhardt & Associates, LLP, Mr. Gebhardt was one of the area's original public interest lawyers at the Dobrovir & Gebhardt firm. He has been engaged in civil litigation throughout his 40-year legal career, and his focus is in employment litigation. He currently represents the plaintiff class in *Breen, et al. v. Mineta*, 05-cv-654 (RWR) and, the recently settled case, *Herron, et al. v. Veneman*, 02-cv-2525 (HHK).

There are no conflicts of interest between the named Plaintiffs and the other proposed class members. Furthermore, the retained attorneys are capable of prosecuting

14

this action on behalf of the proposed class vigorously and efficiently.   Accordingly, Plaintiffs have satisfied the adequacy requirement.

**C.      Plaintiffs Have Met the Requirements of Rule 23(b) of the Federal Rules of Civil Procedure.**

In order to maintain this case as a class action after satisfying Rule 23(a) requirements, plaintiffs must also satisfy the additional requirements of at least one of the subsections of Rule 23(b).   *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997).   In this case, as demonstrated below, the class satisfies Rules 23(b)(1), 23(b)(2) and 23(b)(3).

**1.      Plaintiffs Have Met the Requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure.**

Under Federal Rule of Civil Procedure 23(b)(1), an action may be maintained as a class if the prerequisites of subdivision (a) are satisfied, and if

> prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Federal Rule of Civil Procedure 23(b)(1).   As the language of this rule makes clear, plaintiffs may satisfy one of two requirements.   Rule 23(b)(1)(A) requirements are met in this case.   The Supreme Court has held that Rule 23(b)(1)(A) "takes in cases where the party obliged by law to treat the members of the class alike (a utility acting toward customers, a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water against downriver owners)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) (internal quotations and citations omitted).

Here, it is likely and probable that there would be a significant risk on inconsistent determinations as to any of these issues if the over 1,000 cases were dispersed throughout the District of Columbia District Court or the District of Columbia Superior Court. This is especially so where, as here, there is a focus on obtaining injunctive relief, which needs to be decided and implemented on a uniform basis. *See Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 524 n.3 (D. Md. 2001) ("the general practice is to certify a Rule 23(b)(1)(A) action in cases seeking injunctive or declaratory relief") (citing *In Re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1544 (11th Cir. 1987)).

Accordingly, Plaintiffs satisfy Rule 23(b)(1)(A) requirement and the class should be certified.

### 2.   Plaintiffs Have Met the Requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Under Federal Rule of Civil Procedure 23(b)(2), an action may be maintained as a class if the prerequisites of subdivision (a) are satisfied, and if

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

Federal Rule of Civil Procedure 23(b)(2). As the language of this Rule makes clear, plaintiffs must satisfy two requirements. First, plaintiffs must show that defendants have acted or failed to act on "grounds generally applicable to the class." Second, plaintiffs must show that "final injunctive or corresponding relief" befits the class. Both factors are met here.

Here, as to the first factor, the legal mandates under which Defendants have violated or refused to comply with are applicable to all members of the putative class.

42 U.S.C. § 1981 and 42 U.S.C. § 1983 are both federal statutes that guarantee Plaintiffs a right to work in an environment free of racial discrimination.  To that end, these laws require Defendants to not discriminate against Plaintiffs by denying them opportunities for promotions in favor of non-African American firefighters, subject them to unequal and harsher disciplinary measures for similar conduct of non-African American firefighters, or subject them to a hostile work environment on the basis on their race and to provide Plaintiffs a discrimination-free work environment.  Federal employment laws require Defendants to post, disburse and maintain policies and procedures and practical methods to ensure that it does not promote discrimination by its employees.  However, Plaintiffs have pointed out in their Complaint that Defendants engage in practices, which proven, constitute a pervasive pattern and practice of race discrimination.  *See In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d 231, 236 (E.D.N.Y. 1998) ("When deciding a motion for class certification, the court should accept the allegations in the complaint as true.").

As to the second factor, Plaintiffs are seeking injunctive and declaratory relief, as set forth in the relief section of Plaintiffs' Complaint, on behalf of the class to require Defendants to comply with 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  Plaintiffs are seeking injunction to order Defendants to develop adequate and effective policies and procedures and a practical method for identifying discriminatory practices; to develop a training process; to stop and prevent Defendants current discriminatory practices; to prevent Defendants' past discriminatory practices from injuring Plaintiffs further; and to conduct neutral investigations of discrimination complaints. Defendants' systematic discriminatory violations of denying Plaintiffs the right to make and enforce contracts as

is enjoyed by non-African American firefighters, subjecting Plaintiffs to harsher penalties and treatment than non-African American firefighters, causing Plaintiffs to lose a substantial amount of income and benefits, denying Plaintiffs the enjoyment of the benefits and privileges of a discrimination-free contractual relationship, denying Plaintiffs their constitutional rights under the Fifth Amendment, denying Plaintiffs promotional opportunities, causing loss of employment, and denying the right to work in an environment free of discrimination, which can only be remedied by injunctive and declaratory relief from the Court.

The courts routinely approve Rule 23(b)(2) certification in cases, such as this one, which allege systematic violations of 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Recently the D.C. Circuit Court of Appeals has affirmed this Court's certification of a race-based discrimination case against the District of Columbia Water and Sewer Authority ("WASA") as a Rule 23(b)(2) class action. *In re: DC Water and Sewer Auth.*, 561 F.3d 494 (D.C. Cir. 2009). In that case, like here, African American employees at WASA were denied positions, career ladder promotions, or other advancement or whose advancement was delayed. *Id., see Taylor v. D.C. Water and Sewer Auth.*, 241 F.R.D. 33 (D.D.C. 2007).

Accordingly, these allegations that Defendants maintain a continuing practice of discriminating against Plaintiffs by denying them opportunities for promotions in order to promote non-African American firefighters, subjecting them to unequal and harsher disciplinary measures for similar conduct of non-African American firefighters, and subjecting them to race-based hostile work environment is sufficient to satisfy Rule 23(b)(2) requirement.

18

### 3.     Plaintiffs Have Met the Requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure.

As noted above, in addition to satisfying all the requirements of Rule 23(a), Plaintiffs must also satisfy one of the requirements of Rule 23(b) in order to obtain class certification.  Plaintiffs here seek certification of the class under Rule 23(b)(3), which requires a showing that: (1) issues common to the class "predominate" over those affecting individual class members; and (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding:

> Rule 23(b)(3) permits certification where class suit 'may nevertheless be convenient and desirable.'  Adv. Comm. Notes, 28 U.S.C. App., p. 697.  To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'

*Amchem Products Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  As discussed below, both the "predominance" and the "superiority" requirements are met in this case.

### a.     Common Questions of Law and Fact Predominate.

The standard to determine whether common questions predominate is a flexible one, focusing on whether the common issues are a significant enough part of the case that proceeding as a class makes sense: "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. at 623 (1997); *see also, e.g., Jenkins v. Raymark Industries*, 782 F.2d 468, 472 (5th Cir. 1986) ("In order to 'predominate,' common issues must constitute a significant part of the individual cases."); *Cohen v. District of Columbia National Bank*, 59 F.R.D. 84, 90 (D.D.C. 1972) (predominance is satisfied when the common issues "constitute the central substantive

issues" in this case); *In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless.").

In Section II(B)(2) of this Memorandum, Plaintiffs listed the major questions and issues common to the class. Those issues, which affect each and every class member, completely dominate the litigation, as they are determinative of liability, damage calculation and distribution, and whether certain identifiable assets or facts can be used to satisfy any of the class' claims. Individually and collectively those issues overwhelm any issue that might be peculiar to an individual class member.

In *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988), the court explained that common questions "predominate" when liability in individual actions would require an almost identical evidentiary showing to be repeated thousands of times if the class' claims were to be tried individually:

> Almost identical evidence would be required to establish the level and duration of chemical contamination, the causal connection, if any, between the plaintiffs' consumption of the contaminated water and the type of injuries allegedly suffered, and the defendant's liability . . . . To this extent, a class action in the instant case avoided duplication of judicial effort and prevented separate actions from reaching inconsistent results with similar, if not identical, facts.

*Sterling*, 855 F.2d at 1197.

This is precisely the case here. Liability turns on whether Plaintiffs' race was the reason or one of multiple reasons why Defendants chose to deliberately and systematically deny Plaintiffs opportunities for promotion, discipline more severely, and subject them to race-based hostile work environment Plaintiffs in a different manner than similarly situated non-African American DCFEMS employees. If the legal representative of each Plaintiff were to maintain a separate action, there would be an incredible and

wasteful "duplication of judicial effort" as proof of Defendants unlawful conduct would be identical in each case. Not only do the common substantive liability and satisfaction of judgment issues dwarf any possible individual issue here, but class action singularly assures the most comprehensive and efficient method for Plaintiffs' counsel to invest their resources optimally in prosecuting these common questions.

The only issue here would be individual to each class member is compensatory damages, but it is well established that individual damage issues do not defeat a finding that common liability issues predominate under Rule 23(b)(3):

> Additionally, if members of the class suffered varying amounts of damages, this does not interfere with establishing a class action. *See, e.g., Uniondale Beer*, 117 F.R.D. at 344 ("the fact of differing damages for each class member, ultimately requiring individualized proof, does not bar a finding that common questions predominate.") (citing *Alcoholic Beverages*, 95 F.R.D. at 327 ("the fact that each class member's damages will be different, and, thus, will require individualized treatment does not prevent one from concluding that common questions predominate.")); *see also Plastic Cutlery*, 1998 WL 135703, at *7 (accepting generalized proof to establish predominance for class certification purposes); *Lloyd's American Trust Fund*, 1998 WL 50211, at *14 (although whether a particular class member's losses were caused by defendant's culpable conduct may ultimately need to be determined, it will not defeat class certification); *Contact Lens*, 170 F.R.D. at 531 (rejecting defendants' argument that generalized proof could not be used to prove impact in a vertical antitrust conspiracy claim); *Transamerican*, 130 F.R.D. at 74 (certifying class in antitrust price-fixing conspiracy wherein predominance is susceptible of generalized proof).

*In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d at 246-247; *see also, e.g., Cohen v. District of Columbia Bank*, 59 F.R.D. at 90 ("It is fairly well settled that the need for determining the damages due each member of the plaintiff class after liability has been found should not impair the maintainability of a suit as a class action."); *see Sala v. National Railroad Passenger Corp.*, 120 F.R.D. at 499 (holding, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not

preclude class determination when the issues which determine liability predominate."); *Coleman v. Pension Ben. Gua. Corp.*, 196 F.R.D. 193 (D.D.C. 2003) (mere possibility that individual benefit determinations will be necessary is "insufficient to bar class certification").

Accordingly, the "predominance" of the common questions over individual issues is established, and the class should be certified.

### b.    A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy.

Class actions are the paradigmatic method of resolving mass discrimination cases like the present one, where liability for the class turns on identical questions of law and fact. *See* H. Newberg and Conte, Newberg on Class Actions, 3d ed. 1992, § 17.01, pp. 17-3-17-4. "The superiority requirement of Rule 23(b)(3) is met when a court determines that a class action is superior to other available means of adjudication." *In re Vitamins Antitrust Litig.*, 209 F.R.D. at 270.

The advantages of adjudicating complicated liability questions, discovery disputes, and other issues in a single forum, which would be endlessly repetitive if the class members here were forced to prosecute their claims individually, make proceeding via a class action "superior" to any other form of adjudications:

> [W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy.

*Sterling v. Velsicol Chemical Corp.*, 855 F.2d at 1197.

Another reason proceeding as a class action here meets the superiority test of Rule 23(b)(3) is that the difficulties and expense of establishing liability against governmental

Defendants is such that, as a practical matter, individual actions against these Defendants may not be pursued, and thus Defendants would escape with an unjustified windfall:

> [T]he Advisory Committee [to Rule 23] had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' (citations omitted)  As concisely recalled in a recent Seventh Circuit opinion:
>
>> 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'

*Amchem Products, Inc. v. Windsor*, 521 U.S. at 617 (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *see also Escott v. Barchris Construction Corp.*, 340 F.2d 731, 733 (2d Cir. 1965); *see also, e.g., Cohen v. District of Columbia National Bank*, 59 F.R.D. at 90 (D.D.C. 1972).

This is not to suggest that the claims of the individual members of the class will necessarily be small here.  Indeed, the opposite is the case.  But the point is that the practical economics of labor, costs, and time in this action – with its high expenditures to establish liability, hiring experts, deposing multiple witnesses, litigating largely inevitable discovery disputes, etc. – demonstrate that aggregation of individual causes of action is the only way prosecuting the claims makes economic sense.  *See, e.g.,* Rosenberg, Mandatory-Litigation Class Action: The Only Option for Mass Tort Cases, 115 Harv. L. Rev. 831 (2002).

Accordingly, the "superiority" requirement of Rule 23(b)(3) is established, and the class should be certified.

III.   **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully requests that this Honorable Court grant Plaintiffs' Motion for Class Certification and enter an Order similar to that proposed by Plaintiffs which would (1) certify the Class as proposed, (2) appoint Plaintiffs as Class representatives, (3) appoint Gebhardt & Associates, LLP as Class counsel, and (4) establish a timeframe for the approval and mailing of class notice. Alternatively, if this Honorable Court is not inclined to grant Plaintiff's Motion for Class Certification at this time, then extend the 90-day deadline for the purpose of Plaintiffs to engage in pre-certification discovery.

Respectfully submitted,


By:       _____*/s/ Donna Williams Rucker*_____.
          DONNA WILLIAMS RUCKER
             (D.C. Bar No. 446713)
          CHARLES W. DAY, JR.
             (D.C. Bar No. 459820)
          JOSEPH D. GEBHARDT
             (D.C. Bar No. 113894)
          GEBHARDT & ASSOCIATES, LLP
          1101 17th Street, N.W., Suite 807
          Washington, DC 20036
          (202) 496-0400 (office)
          (202) 496-0404 (facsimile)
          drucker@gebhardtlaw.com
          bday@gebhardtlaw.com
          jgebhardt@gebhardtlaw.com

January 13, 2011                    Counsel for Plaintiffs