**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GERALD BURTON, *et al.*,

        Plaintiffs,

        v.                       Civil Action No. 10-01750 (BAH)

DISTRICT OF COLUMBIA,

        Defendant.

**<u>MEMORANDUM OPINION</u>**

       Plaintiffs are a group of forty-four African-American current and former employees of

the District of Columbia Fire and Emergency Medical Services Department ("D.C. Fire and

EMS").  The plaintiffs seek to initiate a class action against D.C. Fire and EMS on behalf of

themselves and all African-American firefighters and EMS employees who were disciplined or

denied promotions from October 15, 2007 to the present.  The plaintiffs allege that D.C. Fire and

EMS subjected its African-American employees to race-based discrimination, including by

creating a hostile work environment, disciplining African-American employees unfairly, and

denying them promotions.  Presently before the Court is the plaintiffs' motion for class

certification or, in the alternative, for pre-certification discovery.  For the reasons explained

below, the Court will deny class certification at this time, but will permit the plaintiffs to pursue

pre-certification discovery.

**I.      BACKGROUND**

       The plaintiffs filed this putative class action against the District of Columbia on October

15, 2010.[1]  ECF No. 1.  Ninety days later, on January 13, 2011, the plaintiffs filed a motion to

---

[1] The original complaint named several District of Columbia officials as co-defendants, but these co-defendants
have been dropped from the suit.

certify the class.[2]  ECF No. 4.  This case was reassigned to the undersigned presiding judge on

January 20, 2011.  On February 15, 2011, the Court issued a Minute Order noting that over 120

days had passed since the filing of the Complaint in this action, but the Court had no record that

any defendant had been served.  The Court directed the plaintiffs to respond to the Minute Order

by March 1, 2011 by filing proof of service or explaining why service had not yet been

completed.   On March 1, 2011, the plaintiffs filed proof of service and a response stating that

the plaintiffs intended to move for leave to file an amended complaint.  *See* ECF Nos. 6-10.

        With leave of court and with the consent of the defendant, the plaintiffs amended their

Complaint on April 7, 2011.  Am. Compl., ECF No. 20.  The Amended Complaint alleges that

the defendant, the District of Columbia through D.C. Fire and EMS, discriminated against its

African-American employees based on their race in violation of 42 U.S.C. § 1981 and 42 U.S.C.

§ 1983.  Am. Compl. ¶ 1.  Specifically, the plaintiffs allege that the defendants "meted out more

severe punishments to Plaintiffs than non-African-American Firefighters and EMS employees,

unfairly treated Plaintiffs, denied promotions from October 15, 2007 to the present, for which

they were qualified and eligible, in order to promote non-African-American Firefighters and

EMS employees, and subjected Plaintiffs to a race-based hostile work environment."  Mem. in

Supp. of Pls.' Am. Mot. for Class Cert., or Alternatively, Extension of the Deadline to Engage in

Pre-Certification Discovery ("Pls.' Mem."), ECF No. 27, at 3.  Since the factual allegations in

the Amended Complaint, broadly speaking, describe three categories of discrimination – unfair

discipline, unequal promotion, and hostile work environment – the Court will summarize the

allegations for each of these categories of conduct separately below.

---

[2] Local Civil Rule 23.1(b) requires a certification motion to be filed within 90 days of the filing of a putative class action.

### A.      Unfair Discipline Allegations

The Amended Complaint relates several anecdotes of alleged unfair discipline of the plaintiffs.   For example, the Amended Complaint states that "Lieutenant Charles Florence, who is African American, was wrongly found to have engaged in 'sexual harassment' on the basis of a single ill-considered remark and was forced to resign from the D.C. Fire and EMS Department after more than 26 years of service.  In contrast, Sergeant James Clem, who is White, emailed a picture of his penis to an African American female Firefighter . . . and received only a demotion, which was coupled with a beneficial transfer to a high-profile position."  Am. Compl. ¶¶ 41-42. In another allegation, the Amended Complaint alleges that Lieutenant Gerald Burton, an African-American, received a 60-hour suspension for violating Standard Operating Guidelines at a fire scene, but that "White employees, who violated Standard Operating Guidelines for far less compelling reasons than Lieutenant Burton, have received little or no discipline."  *Id.* ¶¶ 31-33. The Amended Complaint details numerous other alleged disparities in discipline in different areas.  For example, it states that "Craig Costello is an African American Firefighter and Paramedic who was suspended as a result of not passing his annual physical in September 2008; however, White employees were not suspended for failing to pass their physical examinations." *Id.* ¶ 53.   Other areas of alleged disparate discipline relate to punishments for infractions such as off-duty citations for driving while intoxicated, failure to report arrests, and being absent without leave.  *See id*. ¶¶ 58, 63, 68-69, 72.  With respect to the various anecdotes of alleged unfairly harsh discipline of African-American employees, the Amended Complaint generally does not allege any facts about the process by which the disciplinary acts came about, which supervisors recommended or imposed the discipline, and whether the same processes or supervisors were

implicated in determining the discipline for the White employees alleged to have received more lenient treatment for comparable infractions.  *See generally id.*

## B.    Unequal Promotion Allegations

The Amended Complaint alleges that the defendant's practices regarding three promotional examinations were discriminatory.  For the 2006 promotion exam, the Amended Complaint alleges that nine plaintiffs were denied promotions when "the District of Columbia deliberately allowed the 2006 Promotion List to expire in order to deny [the plaintiffs] a promotion and promote White employees instead."[3]  *Id.* ¶ 82; *see also id.* ¶¶ 80-88.  For the 2008 promotion exam, the Amended Complaint alleges that two plaintiffs believe that a switch in the defendant's contractors for the exam was part of "a plan and a scheme to rapidly promote White employees" and that these employees were not promoted as "a direct result of this scheme."  *Id.* ¶¶ 89-90.  For the 2010 promotion exam, fourteen plaintiffs allege that they "would have placed higher on the 2010 promotion list had it not been for the unlawful violation of the Special Order sequestering the test administrators and unlawful coaching given to White members of the D.C. Fire and EMS Department."[4]  *Id.* ¶¶ 91-104.

## C.    Hostile Work Environment Allegations

The Amended Complaint contains additional allegations of a racially hostile work environment that do not relate to discipline or promotions.  For example, the Amended Complaint states that "African American Firefighter Kwame Agyeman . . . was subjected to racial slurs and differential treatment . . . [He] also witnesses racial statements . . . made about non-White District of Columbia residents and disparaging comments about the condition in

---

[3] The Amended Complaint does not provide further detail about the process of the expiration of promotion lists, the role of such lists in the defendant's promotion process, or how the expiration of the list would result in a discriminatory outcome.
[4] The Amended Complaint does not provide further detail about these alleged circumstances.

which they lived.  Firefighter Agyeman also received unequal work assignments as compared to

White employees, and he was denied equal training opportunities."  *Id.* ¶ 64; *see also, e.g.*, *id.* ¶

67 ("African American Victoria Nance, a Paramedic with the D.C. Fire and EMS Department,

experienced a hostile work environment . . . in the form of racial epithets, mistreatment,

derogatory comments, unfavorable assignments, and discouragement from pursuing

opportunities. . .");  *id.* ¶¶ 77-78 (same allegations regarding Cranston Lee and Earl Gardner).

### D.    Class Allegations and Claims for Relief

Based upon the allegations summarized above, the plaintiffs seek to pursue a class action

on behalf of "[t]he Class . . . comprised of all current and former African American Firefighters

and EMS employees at the D.C. Fire and EMS Department who experienced a hostile work

environment, were subjected to unfair termination, to discipline unequal to that of their similarly

situated White colleagues, were discriminatorily denied promotions that were awarded to their

White colleagues, or were otherwise subjected to discrimination within the applicable statute of

limitations."[5]  *Id.* ¶ 16.

The Amended Complaint alleges five causes of action.  Count I alleges the defendant

subjected the plaintiffs to a hostile work environment based on race in violation of 42 U.S.C. §

1981.  *Id.* ¶¶ 105-106.  Counts II and III allege discriminatory punishment in violation of 42

U.S.C §§ 1981 and 1983, respectively.  *Id.* ¶¶ 107-110.  Finally, Counts IV and V allege unequal

promotion in violation of 42 U.S.C §§ 1981 and 1983, respectively.  *Id.* ¶¶ 111-114.  The

plaintiffs seek declaratory and injunctive relief; record-clearing and reinstatement for employees

subject to discriminatory discipline; retroactive promotion of all African-American employees

denied promotions from the 2006, 2008, and 2010 promotion exams; back pay and benefits;

---

[5] The plaintiffs clarify in their briefs that the relevant bar date for the statute of limitations is October 15, 2007.  Pls.'
Reply to Defs.' Opp'n ("Pls.' Reply"), ECF No. 31, at 7.

compensatory damages for, *inter alia*, loss of reputation and physical and emotional distress; and punitive damages. *Id.* ¶¶ 115-120.

On August 5, 2011, the plaintiffs filed their motion for class certification or, in the alternative, pre-certification discovery regarding the class allegations in the Amended Complaint. *See* Pls.' Mem.  The Court had granted the plaintiffs additional time to file their motion for class certification, in part, to allow the plaintiffs an opportunity to address the Supreme Court's June 2011 ruling in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), a relevant case involving class certification in employment discrimination lawsuits.  The defendant opposes the plaintiffs' motion for class certification.  *See* Def.'s Opp'n to Pls.' Am. Mot. for Class Cert., or Alternatively, Extension of the Deadline to Engage in Pre-Certification Discovery ("Def.'s Opp'n"), ECF No. 30.  The plaintiffs' motion is presently before the Court.

## II.   LEGAL STANDARDS

"Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. There are two components to the certification inquiry under Rule 23. First, each of the four elements of Rule 23(a) must be met."  *Daskalea v. Wash. Humane Soc.*, 275 F.R.D. 346, 355 (D.D.C. 2011) (citing *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006)). "That is, the proponent of certification must establish: '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'"  *Id.* (quoting Fed. R. Civ. P. 23(a)). "These four requirements are commonly referred to in shorthand as numerosity, commonality, typicality, and adequacy of representation,

respectively." *Id.* "Second, certification of the proposed class must be appropriate under at least one of the three categories enumerated in Rule 23(b)." *Id.*

District courts exercise broad discretion in deciding whether to certify a class. *Id.* at 356; *see also Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994). "The proponent of the class bears the burden of proof." *Daskalea*, 275 F.R.D. at 355 (citing *Harris v. Koenig*, 271 F.R.D. 383, 388 (D.D.C. 2010)). "The Supreme Court has stated that 'Rule 23 does not set forth a mere pleading standard'; rather, '[a] party seeking class certification must affirmatively demonstrate [its] compliance with the Rule—that is, [it] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.'" *Id.* at 355-56 (quoting *Wal-Mart*, 131 S.Ct. at 2551) (emphasis in original). "At times, determining whether the proponent has met its burden will require the district court to 'probe behind the pleadings' and address matters that are enmeshed with the factual and legal issues relevant to the merits of the plaintiffs' causes of action." *Id.* (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *see also Wal-Mart*, 131 S.Ct. at 2251-52. "At the same time, the district court should 'refrain from making determinations on the merits that are unnecessary to resolving the class certification question.'" *Daskalea*, 275 F.R.D. at 356 (quoting *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 323 n.6 (D.D.C. 2011)). "Ultimately, the district court's determination must rest on a 'rigorous analysis' to ensure that all the requirements are satisfied, and '[a]ctual, not presumed, conformance' with Rule 23 is indispensable." *Id.* (quoting *Falcon*, 457 U.S. at 160-61); *see also Wal-Mart*, 131 S.Ct. at 2251 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

III.   **ANALYSIS**

A.     **Class Certification Is Denied At This Time.**

The Court will deny class certification at this time because the plaintiffs have failed to

show that they satisfy the commonality requirement of Rule 23(a)(2).  The Supreme Court

addressed this requirement at length in its recent ruling in *Wal-Mart Stores, Inc. v. Dukes*, which

was also a putative employment discrimination class action.  *See* 131 S.Ct. at 2251-57.  In *Wal-*

*Mart*, the plaintiffs alleged that Wal-Mart discriminated against female employees by denying

them equal pay or promotions compared with male employees.  *Id.* at 2549.  The plaintiffs in that

case had obtained certification from the district court of a plaintiff class consisting of all female

employees of Wal-Mart store "who have been or may be subjected to Wal-Mart's challenged pay

and management track promotions policies and practices."  *Id.*  The Court of Appeals for the

Ninth Circuit substantially affirmed the district court's class certification order, but the Supreme

Court reversed, denying class certification for failure to satisfy the commonality requirement of

Rule 23(a)(2).  *Id.* at 2249-57.

The Supreme Court observed that, in an employment discrimination case, "proof of

commonality necessarily overlaps with [plaintiffs'] merits contention that [the employer]

engages in a *pattern or practice* of discrimination."  *Id.* at 2552.  "That is so because, in

resolving an individual's Title VII [employment discrimination] claim, the crux of the inquiry is

the reason for a particular employment decision."[6]  *Id.* (internal quotation marks omitted)

"Without some glue holding the alleged *reasons* for all those [employment] decisions together, it

will be impossible to say that examination of all the class members' claims for relief will

---

[6] The plaintiffs have pled their claims under 42 U.S.C. §§ 1981 and 1983, rather than Title VII, but the Court finds *Wal-Mart* equally apposite to claims under those statutes, and the plaintiffs have not argued otherwise.

produce a common answer to the crucial question *why was I disfavored*."  *Id.*  The Supreme

Court, relying on its prior decision in *General Telephone Co. of Southwest v. Falcon*, offered two

ways in which plaintiffs might be able to demonstrate commonality for allegedly discriminatory

employment decisions.  *Id.* at 2553 (citing *Falcon*, 457 U.S. at 152, 159 n.15).  "First, if the

employer 'used a biased testing procedure to evaluate . . .  employees, a class action on behalf of

every . . . employee who might have been prejudiced by the test clearly would satisfy the

commonality and typicality requirements of Rule 23(a).'"  *Id.* (quoting *Falcon*, 457 U.S. at 159

n.15).  "Second, '[s]ignificant proof that an employer operated under a general policy of

discrimination conceivably could justify a class of . . . employees if the discrimination

manifested itself in hiring and promotion practices in the same general fashion, such as through

entirely subjective decisionmaking processes.'"  *Id.* (quoting *Falcon*, 457 U.S. at 159 n.15).

The plaintiffs do allege that the defendant used a biased testing procedure in connection

with the 2006, 2008, and 2010 promotion examinations.  *See* Am. Compl. ¶¶ 80-104.  At this

stage, however, the plaintiffs' allegations about those examinations are vague and conclusory.

The Amended Complaint lacks any detail about *how* those examinations operated in a biased

way.  Further, it is apparent from the Amended Complaint that only some of the plaintiffs would

have been injured by these allegedly biased exam procedures.  Thus, even assuming that the

commonality requirement could potentially be satisfied for a class action on behalf of every

employee prejudiced by these testing procedures, it is unclear from the current record whether

the other Rule 23 elements, like numerosity, could be satisfied for such a class.

As for the second method of demonstrating commonality in a putative employment

discrimination class action, the plaintiffs have not shown "[s]ignificant proof that [their]

employer operated under a general policy of discrimination."  The plaintiffs have alleged a series

of instances in which African-American employees purportedly experienced a hostile work environment or received harsher punishments for disciplinary infractions than similarly situated White employees, but many of these allegations are either conclusory or rely on a comparison of the punishments for infractions that appear distinguishable.  *See, e.g.*, Am. Compl. ¶ 67 ("African American Victoria Nance, a Paramedic with the D.C. Fire and EMS Department, experienced a hostile work environment . . . in the form of racial epithets, mistreatment, derogatory comments, unfavorable assignments, and discouragement from pursuing opportunities. . ."); *id.* ¶¶ 47-48 (comparing African-American firefighter terminated for "accidentally injuring another Firefighter while playing with a knife" with a White firefighter demoted for injuring two other firefighters by throwing plates).

Significantly, the Amended Complaint fails to allege any details about the defendant's disciplinary process itself and how it operates in a discriminatory fashion.  *See Wal-Mart*, 131 S.Ct. at 2553 (quoting *Falcon*, 457 U.S. at 159  n.15) ("[S]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class . . . *if the discrimination manifested itself in [employment] practices in the same general fashion,* such as through entirely subjective decisionmaking processes.") (emphasis added).   The plaintiffs respond to this critique in their reply brief by noting that the "Defendant is fully aware of its own disciplinary process."  Pls.' Reply at 4.  The plaintiffs explain further that "[i]n essence, the selection of forums for discipline are directed by an Assistant Fire Chief who would assign the adjudication of discipline to either a Battalion Fire Chief's Conference, a Deputy Chief's Conference or a Trial Board . . . .  Throughout Plaintiffs' Amended Complaint, Plaintiffs were quite clear that there was disparate discipline issued by Trial Boards."[7]  *Id.*  There is nothing

---

[7] The Court does not know whether the plaintiffs mean to concede that adjudications outside the Trial Boards were non-discriminatory.

overtly discriminatory about the plaintiffs' description of this process and if the plaintiffs' contention is simply that the officers on the Trial Board consistently discriminated against African-Americans by giving them harsher punishments than Whites for the same conduct, the plaintiffs must present more evidence than merely the scattershot anecdotes of the Amended Complaint.  *See Moore v. Napolitano*, 269 F.R.D. 21, 27 (D.D.C. 2010) ("To satisfy Rule 23(a)'s commonality requirement, plaintiffs may put forth statistical and anecdotal evidence to support an inference that the defendant's policies and procedures are subjective and susceptible to racial discrimination. . . ."); *see also Wal-Mart*, 131 S.Ct. at 2555-56 (assessing statistical evidence and anecdotal evidence consisting of approximately 120 affidavits from Wal-Mart employees reporting discrimination and finding that this evidence fell "well short" of demonstrating commonality in the context of the claims against Wal-Mart).  In this case, as noted above, several of the anecdotes of disparate treatment are either vague or feature questionable comparisons, and statistical evidence is entirely absent here.  Accordingly, the Court finds that the plaintiffs have failed to meet their burden of proof by affirmatively demonstrating compliance with the commonality requirement of Rule 23.  *See id.* at 2551.  Class certification is therefore denied at this time and the Court need not reach the parties' arguments regarding the additional prerequisites for certification under Rule 23.

### B.      Pre-Certification Discovery Is Warranted.

In the alternative to class certification, the plaintiffs have requested pre-certification discovery to ascertain additional facts that may enable the plaintiffs to satisfy their burden of proof in seeking class certification.  "[O]ften the pleadings alone will not resolve the question of class certification and . . . some discovery will be warranted."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009); *accord Mills v. Foremost Ins. Co.*, 511 F.3d 1300,

1309 & n.14 (11th Cir. 2008); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996).  The

Supreme Court's ruling in *Wal-Mart* confirms that pre-certification discovery should ordinarily

be available where a plaintiff has alleged a potentially viable class claim because *Wal-Mart*

emphasizes that the district court's class certification determination must rest on a "rigorous

analysis" to ensure "[a]ctual, not presumed, conformance" with Rule 23.  *Wal-Mart*, 131 S.Ct. at

2551; *see also id.* at 2551-52 ("Frequently that 'rigorous analysis' will entail some overlap with

the merits of the plaintiff's underlying claim. That cannot be helped. The class determination

generally involves considerations that are enmeshed in the factual and legal issues comprising

the plaintiff's cause of action.") (internal quotation marks and alterations omitted).  The Court

will therefore grant the plaintiffs' request for pre-certification discovery and will refer this case

to a Magistrate Judge for a period of sixty days for pre-certification discovery.[8]

## IV.      CONCLUSION

       For the reasons explained above, the plaintiffs' motion for class certification or, in the

alternative, for pre-certification discovery is granted in part and denied in part.  The request for

class certification is denied at this time.  This case shall be referred to a Magistrate Judge for pre-

certification discovery for a period of sixty days.  An appropriate Order will accompany this

Memorandum Opinion.


DATED: December 23, 2011                      /s/  *Beryl A. Howell*
                                             BERYL A. HOWELL
                                             United States District Judge


---

[8] The plaintiffs' reply brief requests discovery regarding various topics.  Pls.' Reply at 14-15.  The Court does not rule that the plaintiffs are entitled to discovery on any particular subjects at this time.  The parties shall negotiate the scope of discovery with the assistance of the Magistrate Judge, if necessary.